# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| KENNETH EARL CANNON )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AT & T CORP., BELLSOUTH )<br>TELECOMMUNICATIONS, INC. )<br>)<br>Defendants. ) | No. 3:10-cv-0937<br>JUDGE HAYNES |

## AMENDED PROPOSED INITIAL CASE MANAGEMENT ORDER

I. **Jurisdiction and Venue.**

Plaintiff contests jurisdiction with the Court.

II. **Parties' Theories of the Case.**

1. **Plaintiff's Theory of the Case.**

The Plaintiff, Kenneth Earl Cannon, was hired by BellSouth on April 5, 2000, as a machine operator. Defendant, Bellsouth Telecommunications, Inc., merged with Defendant, AT&T in early 2007. During the course of his employment with Bellsouth, Plaintiff was subjected to racial discrimination and subject to a hostile work environment.

When Plaintiff first began to work for these Defendants, all the supervisors met to decide who would take the new employees. Plaintiff had requested the Gallatin site. The second level supervisor stated to the other supervisors during the interview that they had a black applicant and requested who's going to take him. Roy Franklin, the Gallatin supervisor, was silent. Finally, a Nashville supervisor agreed to take Plaintiff. A co-worker named Chris refused to work with Plaintiff solely because of his race.

In approximately 2004, two co-workers, Patrick Anderson and Daniel Gillum, intentionally went to Plaintiff's work site and pulled the wires Plaintiff had worked with and told Plaintiff's supervisor, Roy Franklin, that Plaintiff had failed to perform his job duties. This supervisor then pulled Plaintiff from his job and took Plaintiff to the job site where it was alleged Plaintiff did not do the work. The wires Plaintiff had worked on two days prior had been removed. Plaintiff told his supervisor that he had done the job. A relief supervisor then told Plaintiff that his wire work was being intentionally removed by these two workers. Plaintiff complained to his supervisor, Roy Franklin, about the co-workers removing the wires he had installed and nothing was done about this complaint. Approximately one year later, one of these co-workers called Plaintiff a Nig---. Plaintiff complained and Roy Franklin only requested that the employee apologize.

Plaintiff took leave under the Family and Medical Leave Act of 1993, 29 U.S.C.A. 2601 *et seq*. When he returned from his leave, he was told that his leave affected his seniority. One week after returning, Plaintiff received a letter informing him he was being surplused, or laid off, because of his new lower seniority. His supervisor told Plaintiff that he would have to take a job in Union City. After calling the home office, Plaintiff was told this was not true and he was allowed to bump an employee in Clarksville, Tennessee.

Plaintiff filed an Equal Employment Opportunity complaint against his employer for racial discrimination. Plaintiff was issued a right to sue letter dated May 28, 2010. Plaintiff would state that Defendants intentionally discriminated against the Plaintiff and created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964.

Plaintiff was injured on the job on February 20, 2009, and suffered a serious injury to his left knee and leg. Plaintiff was taken to the hospital by his supervisor Roy Franklin. Plaintiff

2
Case 3:10-cv-00937   Document 12   Filed 02/24/11   Page 2 of 10 PageID #: 49

asked Roy Franklin if there was short term and long term disability to assist him. Roy Franklin told him the short term disability would only last 15 days and that there was no long term disability in the contract. Plaintiff later discovered this was not true. Plaintiff filed his claim under the Tennessee Worker's Compensation Act and received both short term disability and worker's compensation benefits.

Plaintiff underwent surgery to his left knee on April 22, 2009. After the surgery, Plaintiff developed blood clots in his lungs, knee and groin. Plaintiff was completely unable to work during this time.

On September 4, 2009, Defendants fired Plaintiff for misconduct and physical inability to perform his job. Plaintiff had not engaged in any misconduct and had not reached maximum medical recovery. All benefits except for worker's compensation benefits ceased. Plaintiff was also unable to obtain COBRA benefits for both Plaintiff and his family. Plaintiff has since discovered that there was long term disability which would take effect upon the end of the one year period of short term disability benefits.

Plaintiff has since been informed that his supervisor, Roy Franklin, made a typographical mistake when he checked the box that Plaintiff had been terminated for misconduct. Plaintiff was fired before having reached maximum medical improvement. Another white employee was allowed to keep his job and benefits for over 16 months and was then allowed to return back to work.

Plaintiff would state that he was fired and all benefits, including but not limited to family health insurance, long term and short term disability and life insurance, canceled in retaliation for filing an E.E.O.C. complaint against the Defendants in violation of the Tennessee Human Rights Act Tenn. Code Ann. § 4-21-101 and the Tennessee Whistleblower Act § 50-1-304. Plaintiff was

further retaliated against when he was wrongfully informed that there was no long term disability benefits. Plaintiff refused to remain silent about the illegal activities of the Defendants engaging in racial harassment, hostile work environment and discrimination. Plaintiff would further state he was fired and all benefits, including but not limited to family health insurance, long term and short term disability and life insurance, canceled in retaliation for filing a worker's compensation claim. Plaintiff was further retaliated against when he was wrongfully informed that there were no long term disability benefits. Plaintiff would further state he was discriminated against and subjected to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. §2000e, et seq.

### 2. Defendant's Theory of the Case.

Defendant BellSouth Telecommunications, Inc. ("BellSouth")[1] denies that Plaintiff was subjected to any conduct that would constitute actionable racial harassment under Title VII or the Tennessee Human Right Act. BellSouth further denies that Plaintiff made reasonable attempts to report any such purported harassment.

BellSouth denies that it made any decisions with respect to Plaintiff's employment that were based on Plaintiff's race, or in retaliation for filing a charge of discrimination with the EEOC, for taking FMLA leave, or for filing a claim for workers' compensation benefits. BellSouth asserts that the decision to end Plaintiff's employment, and any decisions with respect to Plaintiff's benefits, were made in accordance with company policy and not for any discriminatory, retaliatory, or other illegal purpose.

BellSouth denies that Plaintiff is entitled to the damages he is seeking in this lawsuit.

---

[1] BellSouth asserts that at all pertinent times, Plaintiff was employed by BellSouth Telecommunications, Inc. which operates under the trade name AT&T Tennessee. Therefore, BellSouth is the proper party defendant, not AT&T Corp, who Plaintiff improperly named and served as a defendant. Defendant anticipates there will be a substitution of proper party defendant by consent.

III. Schedule of Pretrial Proceedings.

A. Rule 26 (a) (1) Disclosure

The parties shall make their Rule 26 (a) (1) (A) through (E) disclosures within (30) days from the date of the initial case management conference.

B. Meeting of Counsel and Parties to Discuss Settlement Prospects

Ninety (90) days from the date of the initial case management conference, counsel and clients are required to have a face-to-face meeting to discuss whether this case can be resolved without further discovery proceedings. If a party, other than a natural person, is involved in this litigation, a representative who has the authority to settle shall attend this meeting on behalf of that party. After the meeting is conducted, counsel shall prepare a report and file it with the Court reflecting that the parties met and that the parties made a good faith effort to evaluate the resolution of this case. This report should also include whether the parties believed that one of the Alternative Dispute Resolution ("ADR") procedures under the Local Rules would further assist the parties in resolving this matter.

C. Other Pretrial Discovery Matters

As determined at the case management conference on _2-25-11_, this action is set for a jury trial on _June 26, 2012_ at _9:00_. If this action is to be settled, the Law Clerk shall be notified by noon on _June 22, 2012_ If the settlement is reached thereafter resulting in the non-utilization of jurors, the costs of summoning the jurors may be taxed to the parties dependent upon the circumstances.

A pretrial conference shall be held _June 11, 2012_ at _3:00 pm_ A proposed pretrial order shall be submitted at the pretrial conference.

All discovery shall be completed by the close of business on Friday, December 30, 2011. All written discovery shall be submitted in sufficient time so that the response shall be in hand by Friday, December 30, 2011. All discovery related motions shall be filed by the close of business on Wednesday, December 14, 2011. No motions related to discovery or for a protective order shall be filed until a discovery/protective order dispute conference has taken place and the attorneys of record shall attend and meet, face-to-face, in an effort to resolve the dispute and a jointly signed discovery/protective order dispute statement is submitted setting forth precisely the remaining issues in dispute and the reasons why those issues remain unresolved.

All dispositive motions[2] and <u>Daubert</u> motions shall be filed by the close of business on Tuesday, January 31, 2012, and any response thereto shall be filed by the close of business on ~~Monday, April~~ March 2, 2012. Any reply shall be filed by the close of business on ~~Monday, April~~ March 9, 2012.[3]

Any motion to amend the pleadings or joint parties shall be filed in sufficient time to permit any discovery necessary because of the proposed amendment to be obtained within the time for discovery. No amendments will be allowed if to do so will result in a delay in the disposition of the action by requiring an extension of the discovery deadline.

There shall be no stay of discovery pending disposition of any motions.

Interrogatories pursuant to Rule 33, Federal Rules of Civil Procedure, shall be limited to sixty (60) such interrogatories. Subparts of a question shall be counted as additional questions for purposes of the overall number. In all other respects, Rule 33.01, Local Rules of Court, shall govern.

---

[2] No memorandum in support of or in opposition to any motion shall exceed twenty (20) pages. No reply shall be filed to any response unless invited by the Court.
[3] Strict compliance is required to Rule 56.01, Local Rules of Court, relating to motions for summary judgment.

6
Case 3:10-cv-00937   Document 12   Filed 02/24/11   Page 6 of 10 PageID #: 53

By the close of business on Friday, September 30, 2011, the plaintiff shall declare to the defendants (not to file with the Court) the identity of his expert witnesses and provide all the information specified in Rule 26 (a) (2) (B).

By the close of business on Monday, October 31, 2011, the defendants shall declare to the plaintiff (not to file with the Court) the identity of their expert witnesses and provide all the information specified in rule 26 (a) (2) (B).

Any supplements to expert reports shall be filed by the close of business on Friday, December 30, 2011. There shall not be any rebuttal expert witnesses.

To reduce the needless expenditure of time and expense, there shall not be any discovery depositions taken of expert witnesses. A party, may, however, serve contention interrogatories and requests for admissions upon another party's expert. If these discovery methods prove ineffective, a party may move to take the deposition of the expert. In a diversity action, a treating physician is considered a fact witness unless the physician expresses opinions beyond the physician's actual treatment of the party.

The expert witness report required by Rule 26 (a) (2) (B), Federal Rules of Civil Procedure, is considered to be the expert's direct examination testimony at trial. If an expert expects to expound his or her testimony beyond the wording of the expert's report, the party calling the expert shall inform the opposing party with the specifics of that expounding testimony at least 15 days prior to the dispositive motion deadline.

These rules on experts are to ensure full compliance with Rule 26 (a) (2); to enable the parties to evaluate any <u>Daubert</u> challenges prior to filing dispositive motions; to avoid conflicts with the experts' schedules; and to avoid the costs of expert depositions.

7
Case 3:10-cv-00937 Document 12 Filed 02/24/11 Page 7 of 10 PageID #: 54

Local Rule 39 (c) (6) (c) relating to expert witnesses shall apply in this action, and strict compliance is required.

It is so **ORDERED**.

**ENTERED** this the 25th day of February 2011.

                                                WILLIAM J. HAYNES, JR.
                                                United States District Judge